## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### EASTERN (HELENA) DIVISION

**FUTURE MAE JEFFERS, MARY JEFFERS, HENRY PEACOCK, SHIRLEY HARVELL, REV. RONALD WILLIAMS, PEGGY R. WRIGHT, LAURA LOVE, FRANK SHAW, C. W. CAMPBELL,      LEO CHITMAN, ETTA CAMPBELL, PLEZ LUCAS, VICKIE ROBERTSON, JOSEPH PERRY, ELBERT SMITH, SANDRA BAGLEY, NIKKI DISMUKE, ALICE W. VALLEY, LAKETHA BROWN FLUKER, KATRINA HARRELL, CHESTER HARRELL, EDDIE O'NEAL,   CHRISTOPHER   FRANKLIN,   JACK BERNARD CRUMBLY**

**PLAINTIFFS,**

**VS.    CASE NUMBER: 2:12-cv-0016-JLH**
**Three Judge Panel: Smith, Holmes and Wright**

**MIKE BEEBE, in his capacity as Governor of Arkansas and Chairman of the Arkansas Board of Apportionment,   MARK MARTIN,    in his capacity as Secretary of State of Arkansas and as a member of the Arkansas     Board     of Apportionment,   and   DUSTIN   MCDANIEL, in his capacity as Attorney General of Arkansas and a member of the Arkansas Board of Apportionment; and THE ARKANSAS BOARD OF APPORTIONMENT**

**DEFENDANTS.**

### Response to Motion to Dismiss

Because this response requires the court to examine the allegations in the complaint, we will restate many of the factual statements made in the complaint between paragraphs 29 and 91. As a first thought, it seems fairly difficult to seriously argue that a 91 paragraph complaint is insufficient to put the court on notice of the alleged wrong in a sufficient manner.

## The Facts Which Should be Accepted As True

29. At issue in this litigation is Senate District 24, as drawn by the Board of Apportionment based on the 2010 census and adopted in 2011.  Most of the area of Senate District 24 is within Senate District 16 as adopted by the Board in 2001.

30. East of the White River, from the Missouri Line to the Louisiana Line, a geographic area that covers over one-third of the State of Arkansas, there is a population of African Americans of voting age that is sufficiently large and geographically compact to constitute a majority in a State Senate district.  The area where this is possible includes seven counties: Crittenden, Cross, Lee, Monroe, Phillips, St. Francis, and Woodruff. This area is often referred to as "the Delta."

31. Senate District 24 under the 2011 plan has a Black Voting Age Population (BVAP) of 53%.  But history has shown that a BVAP of significantly less than 60% is not sufficient to permit African American voters to elect a candidate of their choice.  This is because, notwithstanding that African American voters in Arkansas are politically cohesive and usually vote for the same candidates, bloc voting by Whites usually defeats their preferred candidates where the BVAP in the jurisdiction is significantly less than 60%.

32. As this Court found two decades ago, "there is a history of racial discrimination in the electoral process in Arkansas. . . .[T]he history of racial discrimination has adversely affected opportunities for black citizens in health, education, and employment.  The hangover from this history inhibits full participation in the political process."  *Smith v. Clinton*, 687 F. Supp. 1310, 1317 (E.D. Ark. 1988).

33. The finding of racially polarized voting in this area was based on the expert testimony of Dr. Allan Lichtman, who analyzed nine elections involving Black candidates in Crittenden County between 1978 and 1988, including three years of legislative elections and three years of presidential and mayoral elections in West Memphis and Earle.  "Among black

voters, the mean level of support for the black candidates in these nine races was eighty-nine percent. The mean level of support among whites for these black candidates was nine percent." 687 F. Supp. at 1314-17.

34. From that empirical study, and *Ketchum v. Byrne*, 740 F.2d 1398, 1413 (7th Cir. 1984), this Court concluded that: "It is widely understood that 'minorities must have something more than a mere majority even of voting age population in order to have a reasonable opportunity to elect a representative of their choice.' . . .When voting-age population figures are used, a 60% nonwhite majority is appropriate." 687 F. Supp. at 1362-63.

35. The expert testimony of Dr. Richard Engstrom, who analyzed ten races for membership in the Arkansas Legislature between 1978 and 1988 in which a Black candidate ran against a White candidate in a majority-White district, supported a second finding by this Court of racially polarized voting in East Arkansas. See *Jeffers v. Clinton*, 730 F. Supp. 196, 208-09 (E.D. Ark. 1989).

36. Senate District 22, as drawn by the Board of Apportionment in 1991 and used for the May 23, 2000, primary election, had 2000 Census BVAP of approximately 60%.

37. In the Democratic primary of May 23, 2000, for Senate District 22, Black candidate Alvin Simes defeated White candidate Steve Higginbothom, 5,909 votes to 5,276 votes, which was 52.83% to 47.17%. The voting in that election was racially polarized.

38. In 2001, the Board of Apportionment replaced Senate District 22 in the Delta with Senate District 16. Senate District 16 had a 2000 Census BVAP of 55%.

39. In the Democratic primary of May 21, 2002, for Senate District 16, Black candidate Alvin Simes lost to White candidate Steve Higginbothom, 4,299 votes to 6,079 votes, which was 36.47% to 51.57%. The voting in that election was racially polarized.

40. The BVAP in Senate District 16 increased from 55% at the time of the 2000 Census to 61% at the time of the 2010 Census, April 1, 2010.

41. In the Democratic primary election of May 18, 2010, for Senate District 16, no White candidate filed to run against incumbent Senator Jack Crumbly. According to the 2010 Census, the BVAP of Senate District 16 at that time was 61%.

42. Other elections in the Delta counties from 2000 to 2010 show similar results: racially polarized voting has prevented Black candidates from defeating White candidates unless the BVAP in the jurisdiction exceeds 55%.

43. The 2010 Census reported that Senate District 16 had a population of 68,732, which was 14,580, or 17.5%, less than the ideal population of 83,312.

44. To meet equal population requirements, so that the population of Senate District 16 was no more than five percent below the ideal, its boundaries needed to be redrawn to add at least 10,515 people, to bring its population up to at least 79,147.

45. The 2010 Census reported that the population of District 16 included the following, classified by race:

**Table 1 – District 16 Population by Race**

**Total Population**

| White | Black | White % | Black % |
|---|---|---|---|
| 21,622 | 45,252 | 31% | 66% |

**Voting Age Population**

| White | Black | White % | Black % |
|---|---|---|---|
| 18,183 | 30,602 | 36% | 61% |

46. The 2010 Census reported that the White and Black racial classifications of District 16, allocated by county, were as follows:

**Table 2 – District 16 Population by Race by County**

**Total Population**

|  | White | Black | White % | Black % |
|---|---|---|---|---|
| Crittenden | 3,410 | 16,101 | 17% | 81% |
| Lee | 2,934 | 4,970 | 36% | 61% |
| Phillips | 4,568 | 10,375 | 30% | 68% |
| St. Francis | 10,710 | 13,806 | 42% | 54% |
| **Total** | **21,622** | **45,252** | **31%** | **66%** |

**Voting Age Population**

|  | White | Black | White % | Black % |
|---|---|---|---|---|
| Crittenden | 2,888 | 10,309 | 22% | 77% |
| Lee | 2,573 | 3,737 | 40% | 58% |
| Phillips | 3,775 | 6,814 | 35% | 63% |
| St. Francis | 8,947 | 9,742 | 46% | 50% |
| **Total** | **18,183** | **30,602** | **36%** | **61%** |

47. On or about April 4, 2011, plaintiff Senator Jack Crumbly presented to Joe Woodson, staff person for defendant Governor Mike Beebe, Chair of the Board of Apportionment, a proposed map for the successor of District 16, attached to this Complaint as Exhibit 5.

48. The map shown in Exhibit 5 would have altered the boundaries of District 16 by moving further west into St. Francis and Lee counties and further south into Phillips County, areas with high concentrations of African American voters.

49. Phillips, Lee, and St. Francis counties have the first, second, and fifth highest percentage of African American population of any counties in the state.

50. Between April 4, 2011, and July 20, 2011, plaintiff Senator Jack Crumbly had additional conversations with defendant Governor Mike Beebe concerning the boundaries of the district that would succeed District 16 and provided him with additional maps that responded to concerns he raised in those conversations.

51. On information and belief, many other African American voters residing in District 16 expressed concerns similar to Senator Crumbly's at meetings of the Board of Apportionment and directly to individual members of the Board during the period of April through July 2011.

52. The Department of Correction records reflect that on January 13, 2012, there were 834 African-American inmates incarcerated at the East Arkansas Regional Unit  located at Brickeys in Lee County.  These 834 African-American inmates make up 1% of the population of an ideal Senate District (83,312). However, they cannot vote.

53. At least ten legal alternative maps have been drawn that would not dilute the voting strength of African-Americans in Crittenden, Lee, St. Francis and Phillips Counties. An example from January 2012 is attached to this Complaint as Exhibit 1.

54. More than once, defendant Governor Mike Beebe assured plaintiff Senator Crumbly that the successor to District 16 would be the first Senate district drawn by the defendant Board of Apportionment, and that his concerns would be addressed by the Board in its map for that area.

55. On or about July, 2011, defendant Governor Mike Beebe assured plaintiff Senator Crumbly that the successor to District 16 had been the first Senate district drawn by the defendant Board of Apportionment and that his concerns about the district had been addressed by the Board.

56. On July 29, 2011, defendant Board of Apportionment met and by a 2-1 vote adopted the current maps for the state's 35 senate districts.

57. When defendant Board of Apportionment the new plan public, plaintiffs saw that the concerns of African American voters in District 16 had not been met.

58. Rather than moving west to take in all or more of St. Francis and Lee counties, the boundaries of the new district, renumbered as Senate District 24, had been moved north to take in all of Crittenden County.

59. The attached map, plaintiffs Exhibit 3, shows the areas of 2011 District 24 that overlap with 2001 District 16.  It shows how District 24, as drawn by defendant Board of Apportionment, added the rest of Crittenden County, as well as Parkin and Tyronza in Cross County.

60. Whereas African Americans make up about 66% of the total population of District 16, and about 61% of its voting age population, the areas of Crittenden County that were added to create District 24 are about two-thirds White, as shown in the following table:

### Table 3 – Crittenden County Whites Added

**Total Population**

|  | Population | White | Black | White % | Black % |
|---|---|---|---|---|---|
| District 16 Crittenden | 19,864 | 3,410 | 16,101 | 17% | 81% |
| Added | 31,038 | 20,036 | 9,950 | 65% | 32% |
| District 24 Crittenden | 50,902 | 23,446 | 26,051 | 46% | 51% |

**Voting Age Population**

|  | 18+Pop | White | Black | White % | Black % |
|---|---|---|---|---|---|
| District 16 Crittenden | 13,421 | 2,888 | 10,309 | 22% | 77% |
| Added | 22,672 | 15,371 | 6,654 | 68% | 29% |
| District 24 Crittenden | 36,093 | 18,259 | 16,963 | 51% | 47%s |

61. Since District 16 needed to add only about 10,000 people to meet equal-population requirements, adding more than 30,000 people from Crittenden County meant that about 20,000 people needed to be removed from some other part of the district.

62. Defendant Board of Apportionment chose to remove about 15,000 people from St. Francis County. The population removed included slightly more Whites than Blacks, as shown in the following table:

**Table 4 – St. Francis County Whites and Blacks Removed**

**Total Population**

|  | Population | White | Black | White % | Black % |
|---|---|---|---|---|---|
| District 16 St. Francis | 25,558 | 10,710 | 13,806 | 42% | 54% |
| Removed | 15,062 | 7,198 | 7,101 | 48% | 47% |
| District 24 St. Francis | 10,496 | 3,512 | 6,705 | 33% | 64% |

**Voting Age Population**

|  | 18+Pop | White | Black | White % | Black % |
|---|---|---|---|---|---|
| District 16 St. Francis | 19,509 | 8,947 | 9,742 | 46% | 50% |
| Removed | 11,952 | 6,079 | 5,230 | 51% | 44% |
| District 24 St. Francis | 7,557 | 2,868 | 4,512 | 38% | 60% |

63. A voting age population of 11,952 in St. Francis County that had been included in 2001 District 16 was removed from 2011 District 24.

64. Plaintiff Senator Jack Crumbly resides in St. Francis County.   St. Francis County is his base of political support.  Removing 11,952 of the voters in his base county removed 61% of his voting base.

65. Defendant Board of Apportionment, in drawing the Senate plan adopted July 29, 2011, did not remove voters from the base county of any other Democratic member of the Arkansas Senate who is seeking re-election in 2012.

66. Defendant Board of Apportionment also adjusted the boundaries of District 16 in Lee and Phillips counties.  Those adjustments affected fewer people than in Crittenden and St. Francis counties, but they included removing the African American communities of Haynes and Rondo in Lee County and some African American neighborhoods in Helena-West Helena in Phillips County.

67. The resulting District 24 was left by defendant Board of Apportionment with the largest population of any Senate district:  87,147, which is 3,835, or 4.6%,  more than the ideal.

68. St. Francis, Lee, and Phillips counties have economies that are based on agriculture, have limited industrial work, and have struggling schools.  Their populations each have an African American majority.  The natural grouping would be to put the three counties together in District 24.

69. Instead, the 2011 Senate plan adopted by defendant Board of Apportionment divides the three Delta counties among three senate districts (23, 24, and 25), with the purpose and effect of cracking a compact African-American population and reducing their ability to elect their choice of candidates to the Arkansas Senate from two (Districts 24 and 25) to one (District 25).

70. As drawn by defendant Board of Apportionment, the African-American population of District 24 was reduced from 66% of the total population and 61% of the voting age population to 57% of the total population and 53% of the voting age population, as shown in the following table:

**Table 5 – District 24 Population by Race**

**Total Population**

| White | Black | White% | Black% |
|---|---|---|---|
| 35,227 | 49,716 | 40% | 57% |

**Voting Age Population**

| White | Black | White% | Black% |
|---|---|---|---|
| 28,132 | 33,137 | 45% | 53% |

71. The map proposed by plaintiffs as Exhibit 1 is similar to the maps provided to defendant Governor Beebe as described above.  Rather than adding high concentrations of Whites by moving north into Crittenden County, it moves west into St. Francis and Lee counties and south into Phillips County, uniting the African American communities in the Delta, rather than dividing them as 2011 District 24 does.

72. How the three different plans — 2001 District 16, 2011 District 24, and Jeffers_01 District 24 — affect African American voters in the Delta is illustrated in plaintiffs' Exhibit 4.  The 2010 Census figures for the three plans are shown in the following table:

**Table 6 – Population by Race:  2001 Dist. 16, 2011 Dist. 24, Jeffers_01 Dist. 24**

**Total Population**

| | White | Black | White % | Black % |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 2001 District 16 | 21,622 | 45,252 | 31% | 66% |
| 2011 District 24 | 35,227 | 49,716 | 40% | 57% |
| Jeffers_01 District 24 | 27,397 | 52,657 | 33% | 64% |

**Voting Age Population**

| | White | Black | White % | Black % |
|---|---|---|---|---|
| 2001 District 16 | 18,183 | 30,602 | 36% | 61% |
| 2011 District 24 | 28,132 | 33,137 | 45% | 53% |
| Jeffers_01 District 24 | 22,823 | 35,749 | 38% | 59% |

73. Plaintiffs' proposed plan, Jeffers_01, attached as plaintiffs' Exhibit 1, has a BVAP of 59.49%.  It has a lower population deviation than 2011 District 24 (-1,105 or -1.33% vs. 3,835 or 4.60%).  It splits the same number of counties (4) as 2001 District 16 and 2011 District 24 do.  It splits fewer precincts (3) than 2011 District 24 (13).

74. Plaintiffs' proposed plan, Jeffers_03, attached as plaintiffs' Exhibit 6, has a BVAP of 58.41%.  It is a statewide plan, but impacts only one other district—Senate District 23. Jeffers_03 District 24 has a lower population deviation than 2011 District 24 867 or 1.04% vs. 3,835 or 4.60%).  District 24 splits the same number of counties (4) as 2001 District 16 and 2011 District 24 do, and splits fewer precincts (9) than 2011 District 24 does (13).  Jeffers_03 District 23 splits fewer counties (5) than 2011 District 23 does (6), and splits fewer precincts (6) than 2011 District 23 does (10).

75. On information and belief, 2011 District 24 was drawn by defendant Board of Apportionment to avoid contests between White incumbent legislators, at the expense of creating a contest between a White and a Black incumbent legislator.

76. State Representatives Jerry R. Brown, Clark Hall, and Keith Ingram are all White Democratic incumbents residing in 2001 Senate District 17 during their 2011-12 term.

77. Representatives Brown and Hall are serving their third term in the House, and thus are term-limited from running for the House again in 2012.

78. Senator Jim Luker is serving his third term in the Senate, and thus is term-limited from running for the Senate again in 2012.

79. Representative Keith Ingram is currently serving his second term in the Arkansas House of Representatives.

80. On information and belief, members of defendant Board of Apportionment were aware, at the time they drew 2011 Senate District 24, that Representatives Brown, Hall, and Ingram were likely to consider running for the Senate in 2012 if given a favorable district.

81. The 2011 Senate plan for Districts 23 and 24, as drawn by defendant Board of Apportionment, places Representative Jerry R. Brown in the successor to 2001 District 17, which is 2011 Senate District 23, as shown on the map attached as plaintiffs' Exhibit 7.

82. Representatives Hall and Ingram are placed in Senate District 24, along with plaintiff Senator Jack Crumbly.

83. This left Representative Brown as the lone incumbent able to run for the Senate in District 23, since the current incumbent, Senator Jim Luker, is term-limited from running in 2012.

84. On September 14, 2011, Representative Jerry R. Brown announced his intention to run for the Arkansas Senate from District 23.

85. On October 17, 2011, Representative Clark Hall announced his intention to run for Congress from the First Congressional District.

86. On January 17, 2012, Representative Keith Ingram announced his intention to run for the Arkansas Senate from District 24.

87. Defendant Board of Apportionment drew 2011 Senate District 24 so that the number of voters in the base counties of White incumbents was increased, while the number of voters in the base county of the African American incumbent was reduced.

88. The base county of White Representative Keith Ingram is Crittenden.  As compared to 2001 Senate District 16, the number of voters in Crittenden County within 2011 Senate District 24 was increased by 22,672, as shown in Table 3 above.

89. The base county of African American Senator Jack Crumbly is St. Francis.   As compared to 2001 Senate District 16, the number of voters in St. Francis County within 2011 Senate District 24 was reduced by 11,592, as shown in Table 4 above.

90. On information and belief, the intent of defendant Board of Apportionment in adding to District 24 the predominantly White voters of Crittenden County and removing 61% of the voting base of plaintiff Senator Jack Crumbly in St. Francis County was to enable White candidate Keith Ingram to defeat Black candidate Jack Crumbly.  On information

and belief, if not enjoined by this Court, those changes are likely to have the intended effect.

91. The 2011 plan  creates a Senate District 24 that is no longer an effective majority-minority district because its African-American voting strength is significantly reduced in a part of the state where African Americans face some of the toughest challenges --- ranging from ballot access to unemployment, education, criminal justice and a host of other important issues. Each of these issues contributes to the African-American community's inability to elect a candidate of its choice, unless placed in a district with a BVAP exceeding 55%.

## The Law:

Rule 8 of the Federal Rules of Civil Procedure stands at the center of the Defendants move to dismiss the extant complaint. To survive a motion to dismiss, a complaint must be a short and plain statement of the claim showing that the pleader is entitled to relief. FRCP Rule 8(a)(2). See also, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly* instituted the plausibility standard into the pleading lexicon.  For a complaint to be viewed as plausible, it must have sufficient factual content which would allow a court, in its discretion, to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556.

According to the Supreme Court, "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U. S. _____, 2009. Only a complaint which states a plausible claim for relief survives a motion to dismiss. Id. (citing *Twombly* internal citations omitted).

When there are well-pleaded factual allegations, a court should "assume" their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, supra, at

_____. This is a context-specific task for the court. *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2nd Cir. 2007).

        The relevant code section is 42 USC §1973 which states:

        (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which <u>results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b (f)(2) of this title, as provided in subsection (b) of this section</u>.

        (b) A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision <u>are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice</u>. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

        *Id.* (Emphasis added).

        Here, we have a very simple and straightforward cause of action pleaded. The Plaintiffs have pleaded that, in substance, the *Gingles preconditions* have been met and that the district in issue is one that dilutes the voting strength of the voters within the district. Expert testimony is likely necessary to inform the court on certain parts of this case. Some of the allegations may sound conclusory, however, the court should be reminded that in determining whether a district is legally acceptable is a fact-specific inquiry and is a mixed question of fact and law. See generally, *U.S. v. Euclid City School Bd.*, 632 F.Supp.2d 740, 752 (N.D. Ohio, 2009).

        In short, the complaint alleges that the State of Arkansas, through its reapportionment board, has drawn a district which dilutes the voting strength of African Americans within the district even though the district is 57% black with a 52% Black voting age population. The plaintiffs further allege that the Governor and Attorney General jumped through hoops to

accomplish this dilution with the intent of specifically helping a white legislator get elected to the state senate. The allegations go across the line between "Twombly's" conceivable to plausible claims when, in the totality of the circumstances, the court considers that the district began with an approximate 61% BVAP and in need of additional people to meet the standard deviation. See *Baker vs Carr*, 369 U. S. 186 (1962). The board of apportionment split Forrest City, deleted Rondo and Haynes and took out other communities of interest in order to add about 20,000 white people in Crittenden County to this district and make the district pro-white. Additionally, the Governor and Attorney General made this the single largest district in the entire state with a population of nearly 4000 people more than was necessary under the standard deviation. The district, as drawn by the Defendants has a population of 87147 people and a deviation of +4.60%.

It is of singular importance that we point out the State's misunderstanding of the meaning of "packing voters" as a dilution tactic. Eastern Arkansas at this time only has room for one potential effective State Senate District. Packing is an approach to grouping "too many" voters into a single district and thereby depleting or reducing their effectiveness in another district. In this case, however, the state has turned packing on its head and created a situation of cracking or splintering where the strength of the voters has been reduced to a point where white bloc voting will defeat the African American's candidate of choice in the only district allegedly created for them.  Certainly the state is fully aware of House District 17 which has an African-American VAP of 76.24%. The district is likely a portion of State Senate District 25 which has a lower BVAP. These efforts are intentional because the Senate has fewer members and the district are of greater importance and have a larger political impact. The State has not been consistent in its approach to redistricting and cannot articulate a rational basis for its choices made. Certainly, these choices fail to pass must under strict scrutiny.

The Defendants make much adieu about the population shifts through the State of Arkansas. By choice, the defendants list percentages rather than numbers as justification for the

intentional choices made by the Defendants. For example, the Defendants make reference to the growth of the African American population in Benton County by 347.4% without mentioning that said increase totals only 2185 new African Americans people in that county. While mentioning all of the percentage changes as examples of the redistricting hurdles through which the Defendants had to jump, they mention 3333 African-Americans left the counties at issue in this case. Therefore, no more than 3333 people from our area are attributable to the increases in other areas of the state. That number is within the standard deviation for a senate district and is thusly of no consequence for this case.

The defendants offer the defense of cross-over voting. There is no need to address cross over voting at this juncture because such would require evidence and is not appropriate for a motion to dismiss. Additionally, there is no significant evidence which can be credibly adduced a trial that supports that white voters in this part of the state "cross-over" and for a non-white candidate when that choice is available. The evidence will generally show that white cross voting in Eastern Arkansas is tantamount to white bloc voting which is sufficient to defeat the minority preferred candidate.

In light of all that is transpiring in this case, Plaintiffs are requesting that this court take this matter under advisement pending future motions and the conclusion of discovery. This case has been fast tracked and is set for trial in just under 45 days. Plaintiffs' Expert has rendered her report and been deposed. Governor Beebe and General McDaniel will be deposed on Friday, April 30, 2012. Jeffrey Zax, Defendants' Expert will render his report on April 2nd and be deposed on April 3rd. Secretary Martin and Senator Crumbly will be deposed on April 5, 2012. Shortly thereafter, both parties will submitted stipulations or proposed stipulations along with dispositive motions and supporting documentation on the issues on which no material factual dispute remain or is believed to remain.

Finally, Plaintiffs believe it would be an abuse of discretion to find that the complaint, which contains greater factual detail than many of the cases pending around the country, would be deemed, as the Defendants has requested, insufficient to state a plausible claim on its face.

Therefore, the Plaintiffs request that the Motion to Dismiss be denied.

Respectfully Submitted,

James F. Valley, Esq
J F VALLEY ESQ PA
P O BOX 451
423 RIGHTOR STREET, SUITE 3
HELENA-WEST HELENA, AR 72342-0451
(870)338-6487 X 7 Telephone
(866)786-9885 Phone and Fax
james@jamesfvalley.com Email

## CERTIFICATE OF SERVICE

I, James F. Valley, certify that on March 26, 2012, consistent with the requirements of FRCP 5, I served a complete copy of this document with any attachments to counsel as listed below:

Attorneys for Honorable Mike Beebe and
Honorable Dustin McDaniel:

Mr. David Curran, Esq.
david.curran@arkansasag.gov

C. Joseph Cordi, Jr
joe.cordi@arkansasag.gov

Mr. Warren Readour, Esq.
warrenr@arkansasag.gov

Attorneys for Honorable Mr. Martin:
Mr. W. Asa Hutchinson, Esq.
asa@ahlawgroup.com

Mr. W. Asa Hutchinson, III, Esq.
Ahutchinson@ahlawgroup.com

Ms. Kristi Hunter, Esq.
Khunter@Ahlawgroup.com

James F. Valley