IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
EASTERN (HELENA) DIVISION

FUTURE MAE JEFFERS, et al.                                          PLAINTIFFS

vs.                           No.: 2:12-CV-16-JLH

MIKE BEEBE, in his official capacity as Governor of Arkansas and Chairman
of the Arkansas Board of Apportionment; MARK MARTIN, in his
official capacity as Secretary of State of Arkansas and as a member of the
Arkansas Board of Apportionment; DUSTIN MCDANIEL, in his official capacity
as Attorney General and as a member of the Arkansas Board of
Apportionment; and THE ARKANSAS BOARD OF APPORTIONMENT        DEFENDANTS

### BRIEF IN SUPPORT OF DEFENDANT MARTIN'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT

While Separate Defendants Beebe and McDaniel have highlighted specific facts that may bolster their defense, it is important for the Court to understand a broader historical and factual history. This backdrop is necessary for a fair review of Plaintiffs' case.

FACTUAL BACKGROUND

Senator Jack Crumbly was elected in old Senate District 16, which was created after the 2000 Census. Senate District 16 had a black voting age population (BVAP) of 55.4% and was one of four (4) majority minority Senate districts created by the Board of Apportionment in 2001. In 2001, the Board of Apportionment also created 13 majority minority house districts. Crumbly Dep. (Exhibit 2), P. 160.

Of significance, the black voting age population in the four (4) county region that makes up the new Senate District 24 increased. Zax Dep. (Exhibit 3), P. 183. Despite this increase in black voting age population, the Board of Apportionment in 2011 created Senate District 24

1

which decreased the BVAP to slightly less than 53% from 55% in the predecessor Senate District 16.  And while the Board of Apportionment maintained the technical number of majority minority Senate districts at four (4), the fact that the BVAP decreased will most likely have the practical effect of reducing minority representation in the Arkansas General Assembly.  This conclusion is based upon the expert opinion of Dr. Lisa Handley who opines that there must be a BVAP of greater than 55% in order to give the minority an equal opportunity to elect a representative of their choice.  Handley Dep. (Exhibit 1), P. 175.  But it is also based upon the practical and personal political experience of black legislators who have fought in the trenches of Arkansas delta politics for decades.  Senator Crumbly emphasized this point when he testified that black legislators were concerned that a reduced BVAP in the Senate districts would actually have the effect of decreasing minority representation in the Senate from four down to three.  Crumbly Dep. (Exhibit 2), P. 159.

The minority representation on the House side of the General Assembly is also poised to decline in Arkansas for the first time in modern history.  Not only did the Board of Apportionment plan jeopardize minority representation in the State Senate, it reduced the number of majority minority house districts from 13 down to 11.  This reduction sets the stage for a reversal in the historic battle to give minorities an equal opportunity to be heard and represented in the legislature.  Senator Crumbly emphasized this concern dramatically in the following exchange:

> "Q:   But with the House majority-minority districts going from 13 to 11, is there, based upon your political experience and knowledge….is there a

>  chance that majority-minority representation in the House will decrease under the plan adopted?
>
> A: That's very, very, very likely."

Crumbly Dep. (Exhibit 2), P. 162.

The Defendant Secretary of State Mark Martin is well aware of the history of delta politics. Martin was raised in the Arkansas Delta and his former childhood home is now located in the new Senate District 24. Martin Dep. (Exhibit 4), P. 45. As a member of the Board of Apportionment, Martin was concerned about meeting the constitutional requirements of the Jeffers cases in terms of minority representation. For that reason, he presented his own plan that provided a BVAP of 56.1% in the district which is the equivalent to the current Senate District 24. And based upon those concerns, among others, Martin voted against the Board of Apportionment 2011 plan. Martin Dep. (Exhibit 4), P. 80-81.

In his deposition, Martin also questioned the reasoning of adding the area North of Interstate 40 in Crittenden County with a low BVAP to Senate District 24 and taking out the higher BVAP in St. Francis and Lee Counties if the object was to maximize BVAP in District 24. Martin Dep. (Exhibit 4), P. 82-83. Importantly, Martin testified as follows in his deposition:

> "Q: As you sit here today, do you believe that the new Senate District 24 as adopted by the Board of Apportionment would dilute voting strength in Senate District 24 so that blacks do not have an equal opportunity to elect their preferred candidates?
>
> A: I believe it does.

Q: Why do you say that?

A: Given the opportunities for adjusting the senate district, the areas that were chosen to change the senate district, in every case that I'm---been made aware of today and I've looked at had that effect. Based upon what is historically there and what was actually done in this redistricting process, it had the result of diluting Senate District 24."

Martin Dep. (Exhibit 4), P. 135-136.

A review of the record developed thus far demonstrates that the Board of Apportionment only gave lip service to the constitutional requirements of the Jeffers cases to provide equal opportunity for African-American voters to elect representatives of their choice. This observation is illustrated by the following facts in the record.

When Senator Jack Crumbly accompanied by other members of the Legislative Black Caucus met with Governor Beebe after the release of the proposed plan, Governor Beebe told Senator Crumbly that he was sick and tired of him coming in there. Governor Beebe made it clear in a raised voice that he wasn't going to split Crittenden County and "wasn't going to look at those maps". Crumbly Dep. (Exhibit 2), P. 84. Thereafter, the Governor's Chief of Staff told Crumbly that he needed to "get with the program." Crumbly Dep. (Exhibit 2), P. 86.

Further, Secretary of State Martin was troubled by the fact that the principals of the Board of Apportionment were not sufficiently engaged in any of the public hearings as had been the custom in the past. This prompted Secretary Martin to write a letter to Governor Beebe and General McDaniel suggesting that instead of the staff holding the final Board hearing that "the three of us" hold at least one public hearing prior to the final vote. June 20, 2011 Martin letter (Exhibit 5).

Despite this plea the final public hearing was held and Senator Crumbly attended but to his disappointment only Secretary Martin attended. Crumbly Dep. (Exhibit 2), P. 156.

With this history and considering the material facts that remain at issue, Plaintiffs are entitled to their day in court.

## DISCUSSION OF THE LAW

The Separate Defendants Beebe and McDaniel rely heavily if not totally on the Supreme Court's ruling in *Bartlett v. Strickland*, 556 U.S. 1 (2009). However, Separate Defendants' brief does not properly reflect the Court's holding. Separate Defendants assert that the Bartlett Court adopted an "objective, numerical test: Do minorities make up more than 50 percent of the voting age population in the relevant geographic area?" (Brief, P. 11). They go on to argue in their brief that the essence of *Bartlett* is that "there is no liability under Section 2 if the minority-race voters constitute a majority in the district at issue." (Brief, P. 13). This argument is erroneous and not supported by the *Bartlett* decision.

In fact, the *Bartlett* Court used the numerical majority requirement for minorities as a floor and not a ceiling. In other words, a case under Section 2 cannot be made when the minority voters in a particular area do not constitute at least 50% of the voting age population. The Court makes this very clear when it states:

"A party asserting Section 2 liability must show by a preponderance of the evidence that the minority population in the potential election district is greater than 50 percent." (*Bartlett*, at page 1237).

The factual background is important. In *Bartlett* the issue was whether a party's Section 2 claim can be sustained when the minority population is much less than 50% but claim that with crossover votes the minorities can actually elect a candidate of their choice. The Court held that you cannot consider crossover votes in making a Section 2 claim. Of course, that argument does not apply to the instant case because the threshold or floor of 50% is met in Senate District 24 because the BVAP in the geographic area in question is more than sufficient to create such a district.

## THIRD GINGLES PRECONDITION

Separate Defendants argue that the third *Gingles* precondition cannot be met because Plaintiffs have failed to show that there is white bloc voting sufficient to defeat the minority's preferred candidate. (Brief, P. 14). There remains a factual issue on this point that deserves a full evidentiary hearing at trial. While there are many facts that are not in dispute, primarily the voting statistics; the experts disagree on how to analyze and interpret those statistics. It is a factual issue as to which expert has the most credibility; the greatest relevant experience and the most credible analysis that must be litigated. For example, Separate Defendants argue that Plaintiffs cannot show that bloc voting by whites in the relevant district has "usually" or "normally" defeated the minority-preferred candidate. (Brief, P. 14). The Separate Defendants are making a persuasive argument that this issue cannot be resolved short of a full factual development at trial. Particularly, since the electoral outcome of a new Senate District 24 must be extrapolated from election results from other districts and from patterns of minority voter turnout percentages, then there remains a genuine issue of material facts to be resolved.

DISMISSAL OF INTENTIONAL DISCRIMINATION CLAIM

There is no factual basis for an intentional discrimination claim against the Defendant Secretary Mark Martin and therefore summary judgment should be granted in his favor on that claim. The Plaintiff Jack Crumbly testified very honestly and clearly that there is no evidence of intentional discrimination on the part of the Defendant Martin. Crumbly Dep. (Exhibit 2), P. 164.

CONCLUSION

For the reasons stated above, there are remaining issues of material fact on the Section 2 claim and it should proceed to trial. The constitutional claim based upon intentional discrimination should be dismissed.

Respectfully submitted,

/s/ Asa Hutchinson_____
ASA HUTCHINSON
Arkansas Bar No. 75065
asa@ahlawgroup.com
W. ASA HUTCHINSON III
Arkansas Bar No. 2001115
ahutchinson@ahlawgroup.com
THE ASA HUTCHINSON LAW GROUP, PLC
3300 Market Street, Suite 404
Rogers, Arkansas 72758
(479) 878-1600 – Phone
(479) 878-1605 – Facsimile

*Attorneys for Separate Defendant Mark Martin, in his official capacity as Secretary of State of Arkansas and as a member of the Arkansas Board of Apportionment*

## CERTIFICATE OF SERVICE

I, Asa Hutchinson, hereby certify that on April 27, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the listed CM/ECF participants as follows:

| | |
|---|---|
| James F. Valley<br>J F VALLEY ESQ PA<br>P.O. Box 451<br>Helena-West Helena, AR 72342<br>james@jamesfvalley.com | Warren T. Readnour<br>Office of the Attorney General<br>323 Center Street, Suite 500<br>Little Rock, Arkansas 72201<br>warren.readnour@arkansasag.gov |
| Peter Wattson<br>Attorney at Law<br>5495 Timber Lane<br>Shorewood, MN 55331<br>peterwattson@gmail.com | David A. Curran<br>Office of the Attorney General<br>323 Center Street, Suite 500<br>Little Rock, Arkansas 72201<br>david.curran@arkansasag.gov |
| *Attorneys for Plaintiffs* | C. Joseph Cordi<br>Office of the Attorney General<br>323 Center Street, Suite 500<br>Little Rock, Arkansas 72201<br>joe.cordi@arkansasag.gov |
| | *Attorneys for Separate Defendants Governor Mike Beebe, Attorney General Dustin McDaniel, and The Arkansas Board of Apportionment* |

/s/ Asa Hutchinson