**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**EASTERN (HELENA) DIVISION**

FUTURE MAE JEFFERS, et al.                                          PLAINTIFFS

vs.                          No.: 2:12-CV-16-JLH

MIKE BEEBE, in his official capacity as Governor of Arkansas and Chairman
of the Arkansas Board of Apportionment; MARK MARTIN, in his
official capacity as Secretary of State of Arkansas and as a member of the
Arkansas Board of Apportionment; DUSTIN MCDANIEL, in his official capacity
as Attorney General and as a member of the Arkansas Board of
Apportionment; and THE ARKANSAS BOARD OF APPORTIONMENT        DEFENDANTS

<u>**TRIAL BRIEF SUBMITTED BY DEFENDANT**</u>
<u>**SECRETARY OF STATE MARK MARTIN**</u>

The Defendant Secretary of State Mark Martin through his attorneys submits the

following Trial Brief to aid the Court during the trial proceedings.

<u>**UNIQUE POSITION OF DEFENDANT MARTIN**</u>

In this case, Defendant Martin voted against the redistricting plan adopted by the majority

of the Board and is the only Defendant to do so.  At trial Defendant Martin will testify that:

(a)      The new Senate District 24 as adopted by the Board of Apportionment dilutes the

voting strength of African Americans to the extent that blacks do not have an equal opportunity

to elect their preferred candidates.

(b)      The new Senate District 24 could have met the requirements of population size by

adding geographic areas that would not have diluted the black voting age population.

1

(c)    He did not discriminate against African Americans in his actions as a member of the Board of Apportionment and he certainly did not intentionally discriminate.  In fact, the Defendant Martin presented his own redistricting plan, which will be introduced at trial, which demonstrates that it was not necessary to dilute the black voting age population in the new Senate District.  His plan maintained black voting age population at 56.1%.

(d)    Secretary Martin is also prepared to testify as needed for the benefit of the Court regarding the requirements of Arkansas election law on timelines, in the event a new election date is required as part of any remedy in this case.

As a constitutional officer and member of the Board of Apportionment, Secretary of State Mark Martin has a duty to uphold his oath of office and to carry out the election responsibilities assigned to him under the constitution and laws of the State of Arkansas.  His presentation at trial will balance his duty for an orderly election process with his legitimate concerns about the vote dilution of the black voting age population in the new Senate District 24.

## BRIEF RECITATION OF KEY FACTS

Senator Jack Crumbly was elected in old Senate District 16, which was created after the 2000 Census.  Senate District 16 had a black voting age population (BVAP) of 55.4% and was one of four (4) majority minority Senate districts created by the Board of Apportionment in 2001.   In 2001, the Board of Apportionment also created 13 majority minority house districts. Crumbly Dep., P. 160.

Of significance, the black voting age population in the four (4) county region that makes up the new Senate District 24 increased.  Zax Dep., P. 183.   Despite this increase in black voting

age population, the Board of Apportionment in 2011 created Senate District 24 which decreased the BVAP to slightly less than 53% from 55% in the predecessor Senate District 16.  And while the Board of Apportionment maintained the technical number of majority minority Senate districts at four (4), the fact that the BVAP decreased will most likely have the practical effect of reducing minority representation in the Arkansas General Assembly.  This conclusion is based upon the expert opinion of Dr. Lisa Handley who opines that there must be a BVAP of greater than 55% in order to give the minority an equal opportunity to elect a representative of their choice.  Handley Dep., P. 175.  The minority representation on the House side of the General Assembly is also relevant in assessing the discriminatory impact of the adopted redistricting plan.  Minority representation in the House is poised to decline in Arkansas for the first time in modern history.   Not only did the Board of Apportionment plan jeopardize minority representation in the State Senate, it reduced the number of majority minority House Districts from 13 down to 11.  This reduction raises the specter of a reversal in the progress made in this State to give minorities an equal opportunity to be heard and represented in the legislature. Senator Crumbly emphasized this concern dramatically in the following exchange:

> "Q:    But with the House majority-minority districts going from 13 to 11, is there, based upon your political experience and knowledge….is there a chance that majority-minority representation in the House will decrease under the plan adopted?
>
> A:     That's very, very, very likely."
>
> Crumbly Dep., P. 162.

The Defendant Secretary of State Mark Martin is well aware of the history of Delta politics.  Martin was raised in the Arkansas Delta and his former childhood home is now located in the new Senate District 24.  Martin Dep., P. 45.  As a member of the Board of Apportionment, Martin was concerned about meeting the constitutional requirements of earlier Jeffers case law in terms of minority representation.  For that reason, he presented his own plan that provided a BVAP of 56.1% in the District which is the equivalent to the current Senate District 24.   And based upon those concerns, among others, Martin voted against the Board of Apportionment 2011 plan.  Martin Dep., P. 80-81.

In his deposition, Martin also questioned the reasoning of adding the area North of Interstate 40 in Crittenden County with a low BVAP to Senate District 24 and taking out the higher BVAP in St. Francis and Lee Counties if the object was to maintain a sufficient BVAP in the 2011 District 24 plan.  Martin Dep., P. 82-83.   Importantly, Martin testified as follows in his deposition:

> "Q:     As you sit here today, do you believe that the new Senate District 24 as adopted by the Board of Apportionment would dilute voting strength in Senate District 24 so that blacks do not have an equal opportunity to elect their preferred candidates?
>
> A:      I believe it does.
>
> Q:      Why do you say that?
>
> A:      Given the opportunities for adjusting the senate district, the areas that were chosen to change the senate district, in every case that I'm---been made aware of today and I've looked at had that effect.  Based upon what is historically there and what was actually done in this redistricting process, it had the result of diluting Senate District 24."

Martin Dep., P. 135-136.

At trial it will be demonstrated that the Board of Apportionment only gave lip service to the constitutional requirements of the Jeffers cases to provide equal opportunity for African-American voters to elect representatives of their choice.  This observation is illustrated by the following facts in the record:

When Senator Jack Crumbly accompanied by other members of the Legislative Black Caucus met with Governor Beebe after the release of the proposed plan, Governor Beebe told Senator Crumbly that he was sick and tired of him coming in there.  Testimony of Senator Crumbly will be that Governor Beebe made it clear in a raised voice that he wasn't going to split Crittenden County and "wasn't going to look at those maps".  Crumbly Dep., P. 84.  Thereafter, the Governor's Chief of Staff told Crumbly that he needed to "get with the program."  Crumbly Dep., P. 86.

Further, Secretary of State Martin was troubled by the fact that the principals of the Board of Apportionment were not sufficiently engaged in any of the public hearings as had been the custom in the past.  This prompted Secretary Martin to write a letter to Governor Beebe and General McDaniel suggesting that instead of the staff holding the final Board hearing that "the three of us" hold at least one public hearing prior to the final vote.  June 20, 2011 Martin letter to be introduced at trial.

Despite this plea, the final public hearing was held and Senator Crumbly attended but to his disappointment only Secretary Martin attended.  Crumbly Dep., P. 156.

While Plaintiffs will determine what testimony is presented in their case in chief, the Defendant Martin believes the above facts will be established through testimony and stipulated exhibits.  This factual development is relevant and important from the perspective of Defendant Martin.

## KEY ISSUES OF FACT AND LAW

1.     Have the *Gingles* preconditions been established by the Plaintiffs to sustain a Section 2 claim?

In *Thornburg v. Gingles*, 478 U.S. 30 (1986), the Supreme Court articulated three threshold requirements for a claim of vote dilution:  (a) the minority group must be sufficiently and geographically compact to constitute a majority in a single member district; (b) the minority group must be politically cohesive; and (c) the majority must vote sufficiently as a bloc to enable it to usually defeat the minority's preferred candidate.

Defendant Martin submits that the proof will be substantial that the first two preconditions have been established.  Defendant Martin's plan and the current Plaintiffs' plan demonstrate that African Americans in the geographic area of Senate District 24 are sufficiently large in number and compact in geography to constitute a majority in a constitutionally sound Senate District in that area.

The second precondition of cohesive voting patterns by the minority will presumably be confirmed by testimony and analysis of Plaintiffs' expert, Dr. Lisa Handley.   Defendant Martin concurs in this conclusion based upon his own personal experiences in this area.

The third requirement that the white majority votes sufficiently as a bloc to enable it to usually defeat the minority's preferred candidate is a greater challenge for the Plaintiffs but the testimony of Dr. Handley, per her deposition and anticipated trial testimony, provides support for that proposition.  Defendant Martin submits that this issue is the key question for trial.  The following related questions need to be addressed at trial:

(a)  What are the most relevant and instructive electoral races to be considered by the Court in assessing the evidence on racial bloc voting?  How relevant are presidential primary and general elections?  How significant are statewide races?

The Defendant Martin submits that the legislative primary races are the most endogenous and reliable indicators in determining the extent of racial bloc voting.  A review of the legislative primary races in the Delta area demonstrates to a reliable degree that racial bloc voting still exists in the Delta.

(b)  What is the level of black voting age population in the geographic area of Senate District 24 which is necessary to provide African Americans with an equal opportunity to elect candidates of their choice?

The question at trial is how much greater than 50% is necessary to provide the minority with an equal opportunity at electoral success.  The factual development on this issue at trial is important to the Court's final decision.  Dr. Handley, the Plaintiffs' expert, states that a black voting age population above 55% is necessary to provide equal opportunity.  Dr. Zax disputes this contention and asserts that 49.9% is sufficient.  Defendant Martin presented a redistricting

plan that provided a 56% BVAP in the same geographic area as Senate District 24 for the reason that he believed the previous Jeffers decision required this level of BVAP.

Respectfully submitted,

/s/  Asa Hutchinson
ASA HUTCHINSON
Arkansas Bar No. 75065
asa@ahlawgroup.com
W. ASA HUTCHINSON III
Arkansas Bar No. 2001115
ahutchinson@ahlawgroup.com
THE ASA HUTCHINSON LAW GROUP, PLC
3300 Market Street, Suite 404
Rogers, Arkansas 72758
(479) 878-1600 – Phone
(479) 878-1605 – Facsimile

*Attorneys for Separate Defendant Mark Martin, in his official capacity as Secretary of State of Arkansas and as a member of the Arkansas Board of Apportionment*

## CERTIFICATE OF SERVICE

I, Asa Hutchinson, hereby certify that on May 2, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the listed CM/ECF participants as follows:

James F. Valley
J F VALLEY ESQ PA
P.O. Box 451
Helena-West Helena, AR 72342
james@jamesfvalley.com

Peter Wattson
Attorney at Law
5495 Timber Lane
Shorewood, MN 55331
peterwattson@gmail.com

*Attorneys for Plaintiffs*

Warren T. Readnour
Office of the Attorney General
323 Center Street, Suite 500
Little Rock, Arkansas 72201
warren.readnour@arkansasag.gov

David A. Curran
Office of the Attorney General
323 Center Street, Suite 500
Little Rock, Arkansas 72201
david.curran@arkansasag.gov

C. Joseph Cordi
Office of the Attorney General
323 Center Street, Suite 500
Little Rock, Arkansas 72201
joe.cordi@arkansasag.gov

*Attorneys for Separate Defendants*
*Governor Mike Beebe, Attorney*
*General Dustin McDaniel,*
*and The Arkansas Board of*
*Apportionment*

/s/ Asa Hutchinson